Todd Picker, Esq. (SBN 132905)
LAW OFFICE OF TODD PICKER
850 E. Chapman Ave., Suite A
Orange, CA 92866
Telephone: 714-744-8390
Fax: 714-388-3756
Email: todd.picker@sbcglobal.net

FILED
NOV 06 2009
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

Attorney for JUERGEN VOTTELER, Plaintiff

# UNITED STATES BANKRUPTCY COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>WANG, HUI<br><br>Debtor. | Case No.: 2:09-BK-19641 ER<br><br>Chapter 7 |
| JUERGEN VOTTELER,<br><br>Plaintiff,<br>v.<br><br>HUI WANG,<br><br>Defendant. | Adversary No.: 09-01865 ER<br><br>**FIRST AMENDED COMPLAINT FOR NONDISCHARGEABILITY OF DEBTS** UNDER 11 U.S.C. §523(a) |

JUERGEN VOTTELER ("Plaintiff") alleges:

## I. PARTIES

1.   Plaintiff is an individual residing in the country of Germany. Plaintiff is a judgment creditor of Debtor, holding a fraud judgment against her for $3,419,387.48, plus accruing post-judgment interest.

2.   Hui Wang (also known as "Cindy Tringham"; "Debtor") is the Debtor in this Chapter 7 bankruptcy case.

1

**Non-Dischargeability Complaint**

## II. JURISDICTION AND VENUE

3. This matter arises under the Bankruptcy Code and is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O).

4. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), and 1334 and 28 U.S.C. § 2201.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## III. FACTUAL ALLEGATIONS

6. On July 23, 2008, Plaintiff obtained a judgment of joint and several liability for *inter alia* fraud, conversion, and constructive trust against defendants Robert Tringham ("Tringham"), Debtor, Finbar Securities Corp., a California corporation ("Finbar")[1], Finbar Asia Philippines, Inc., a California corporation, Finbar Asia Philippines, Inc., a business entity form unknown organized under the laws of the Philippines, and Swiss Global Connect USA, Inc., a California corporation. The facts are as follows.

7. In or around April 2006, Plaintiff was introduced to Tringham, who claimed to be Debtor's boyfriend and or fiancé. Plaintiff is informed and believes that beginning in January 1998 Debtor Wang in fact became a knowing and active participant in Tringham's fraudulent business activities. Between 1998 and 2008 Debtor facilitated and assisted Tringham to defraud Plaintiff and others by, among other things, opening one or more bank accounts in foreign countries using the name "Cindy Tringham," sharing bank accounts with Tringham and establishing various shell companies such as Wangao Properties Corp., for the purpose of helping him hide and to use stolen funds. Debtor Wang took and used for her own personal benefit funds stolen from Votteler, and possible others. Plaintiff is informed and believes Debtor Wang knew that Tringham falsely held himself out to be a licensed securities broker and president of Finbar. Plaintiff is informed and believes that all relevant times Tringham

---

[1] The corporate status of Finbar is "suspended."

2

**Non-Dischargeability Complaint**

1 and Debtor <u>posed, and lived together,</u> as husband and wife, maintained joint savings, checking and investment accounts <u>and purchased real estate in order to further their fraudulent enterprise</u>.

<u>7(a).</u> Tringham represented <u>to Plaintiff and others</u> that Finbar was a <u>broker-dealer</u> licensed by the US Securities and Exchange Commission ("SEC") and the National Association of Securities Dealers ("NASD"). These representations were false <u>and at all relevant times Debtor knew the representations were false.</u>

8. Tringham represented to Plaintiff that Plaintiff qualified for "high yield" investments, where the funds he invested would be used to buy bonds, notes and other debt instruments, precious metals (gold, and silver in the "GLD" system), derivatives, *et cetera*; and that Plaintiff's funds would be placed in a multi-currency account at Bank of America. These representations were false <u>and at all relevant times Debtor knew the representations were false.</u>

9. On or about July 7, 2006, in reliance on Tringham's false representations, Plaintiff was induced to sign an alleged "Wealth Management Agreement." Tringham told Plaintiff that, pursuant to the Wealth Management Agreement, he would open an account in Plaintiff's name at National Financial Services, Inc., a subsidiary of Fidelity Investments (a reputable clearinghouse), that Plaintiff would have access to the money in his account, and that profits earned by his investments under the Agreement would be distributed to this account as earned. These representations were false <u>and at all relevant times Debtor knew the representations were false.</u>

10. On July 14, 2006, Plaintiff wire transferred €1,000,000 to a Bank of America account controlled by Tringham. On October 26, 2006, Plaintiff wire transferred €831,554 more to the same Bank of America account. The money was converted from Euros into approximately US $2,916,747 at the then-current exchange rate.

3

**Non-Dischargeability Complaint**

11.     The representations made by Tringham and as set forth in the Wealth Management Agreement were false. Finbar is not now, nor has it ever been a licensed securities broker dealer. Finbar was not an operational company when Plaintiff signed the Wealth Management Agreement. Nor was a trading account with a reputable clearinghouse ever established in Plaintiff's name or on his behalf.

12.     Defendant was at all relevant times aware that Plaintiff's money had been obtained by fraud. <u>Debtor Wang knew that Tringham was not a legitimate business person. She knew that Tringham falsely posed as a licensed securities broker dealer and helped him create and maintain a labyrinth of shell business entities, such as Wangao Properties Corp., to deceive Plaintiff and other potential investors.</u> After receiving Plaintiff's money, Tringham and Debtor converted the funds to their own use <u>and/or Debtor would attempt to hide the funds using one of her own shell companies and/or bank accounts she had established here in the United States and elsewhere, sometimes using the name Cimdy Tringham or Wangao Properties Corp. Debtor maintained and kept records for Tringham as part of their scheme to defraud Plaintiff and others and thus was fully aware of the nature and extent of Tringham's activities and the resulting harm.</u> Plaintiff is informed and believes that Tringham and Debtor purchased with funds stolen from Plaintiff and/or other victims of their fraudulent investment schemes a home, a $40,000 diamond ring, a Range Rover and a BMW.

13.     Tringham also transferred large sums of money to Debtor between 2006 and 2008. Debtor has transferred some of these funds to China, where her parents live, <u>and elsewhere. Plaintiff is informed and believes that Debtor opened and/or owns bank accounts in the Philippines in her own name or using the name of Cindy Tringham. Debtor is and was aware that all funds transferred to her by Tringham were obtained by fraud. The true and full extent of Debtor's efforts to secret Plaintiff's money is known only to Debtor.</u>

4

**Non-Dischargeability Complaint**

14. On July 11, 2007, Plaintiff filed a complaint in the Los Angeles Superior Court against Debtor, Tringham, Finbar, and others for *inter alia* fraud, conversion and constructive trust.

15. On July 23, 2008, the Superior Court entered judgment against Debtor, Tringham and others (the "Judgment"). A copy of the Judgment is attached as Exhibit "A."

16. In or about early 2009, the Securities and Exchange Commission filed suit against Tringham and obtained a preliminary injunction freezing his assets and appointing a receiver to assume control of his companies. Tringham has since been arrested and is in federal custody pending criminal trial in the US District Court for the Central District of California. He awaits trial on charges that, among other things, he violated federal securities laws.

## IV. BASES FOR NONDISCHARGEABILITY OF DEBTS

**A.     Bankruptcy Code § 523(a)(2)(A)— False Pretenses, False Representation, or Actual Fraud**

17. Plaintiff realleges paragraphs 1 through 16 above.

18. Section 523(a)(2)(A) states, in pertinent part that:

"[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt— for money ... to the extent obtained, by— false pretenses, a false representation, or actual fraud ..."

As set forth above, Debtor– in concert with Tringham– obtained money from Plaintiff and was a knowing an active participant in the fraudulent scheme to defraud Plaintiff. Debtor's conduct constituted actual fraud in that

a. She was an active and knowing participant in Tringham's fraudulent activities, including the scheme to defraud Plaintiff, beginning as early as 1998. Plaintiff is informed and believes that Debtor Wang knew that Tringham

5

**Non-Dischargeability Complaint**

Main Document    Page 6 of 10

fraudulently posed as a legitimate business person and licensed securities broker dealer for the purpose of defrauding Plaintiff. Plaintiff is informed and believes that beginning in 1998 Debtor actively assisted Tringham defraud unsuspecting investors by helping him hide and use money stolen from such persons. With funds acquired through Tringham's misrepresentations Debtor Wang would, among other things, purchase assets such as a home located in Diamond Bar, which is now the subject of a civil forfeiture action filed by the United States. Debtor knowingly took, used and concealed stolen money that Tringham gave her;

b. She knew the money was Plaintiff's and received various payments from Tringham, some as large as $118,180, of funds that had been stolen from Plaintiff. Debtor maintained and kept records for Tringham as part of their scheme to defraud Plaintiff and others and thus was fully aware of the nature and extent of Tringham's activities and the resulting harm;

c. She knowingly transferred the money to China and elsewhere;

d. Plaintiff is informed and believes Debtor failed and refused to fully disclose the transfers to Plaintiff, the Los Angeles Superior Court, and the United States Trustee in this bankruptcy case; and

e. Plaintiff sustained losses as a proximate result of Debtor's actions.

19. Further, Debtor owes Plaintiff all money that Tringham transferred to her, for her personal use including (a) funds sent to various bank and investment accounts, (b) automobiles bought or leased with Plaintiff's funds, and (c) part or all of other assets bought with his funds, including assets that Debtor may have listed as exempt in her bankruptcy schedules. Such property was knowingly obtained by false pretenses, false representations, and/or actual fraud. Debtor was a knowing and active participant in the scheme to defraud Plaintiff.

20. Plaintiff suffered damage as a result of the fraud.

6

**Non-Dischargeability Complaint**

21. Plaintiff is entitled to an award of his actual damages, as set forth in the Judgment.

22. Plaintiff is also entitled to exemplary damages, as set forth in the Judgment.

23. Plaintiff is entitled to a determination that Debtor's indebtedness to him is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

**B.    Bankruptcy Code § 523(a)(6)– Willful and Malicious Injury**

24. Plaintiff realleges paragraphs 1 through 16 and 18 through 23 above.

25. A debt is nondischargeable if it is "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

26. Debtor took the actions described above willfully and maliciously so that Plaintiff suffered deliberate or intentional injury. Debtor's actions evidenced either (i) an objective substantial certainty of harm or (ii) a subjective motive to cause harm in that Debtor was a knowing an active participant in Tringham's fraudulent enterprise, beginning as early as 1998. Plaintiff is informed and believes that Debtor Wang knew that Tringham fraudulently posed as a legitimate business person and licensed securities broker dealer for the purpose of defrauding Plaintiff. Plaintiff is informed and believes that beginning in 1998 when Debtor opened a bank she actively assited Tringham defraud unsuspecting investors by helping him hide and use money stolen from such persons. With funds acquired through Tringham's representations Debtor Wang would, among other things, purchases assets such as a home located in Diamond Bar, which is now the subject of a civil forfeiture action. Debtor knowingly took, used and concealed stolen money that Tringham gave her.

26(a). Defendant was at all relevant times aware that Plaintiff's money had been obtained by fraud. Debtor Wang knew that Tringham was not a legitimate business person. She knew that Tringham falsely posed as a licensed securities broker dealer and helped him create and maintain a labyrinth of shell business entities, such as Wangao Properties Corp., to deceive Plaintiff and other potential investors. Debtor maintained

7

**Non-Dischargeability Complaint**

and kept records for Tringham as part of their scheme to defraud Plaintiff and others and was therefore fully aware of the nature and extent of Tringham's activities and the resulting harm. After receiving Plaintiff's money, Tringham and Debtor converted the funds to their own use and/or Debtor would attempt to hide the funds using one of her own shell companies and/or bank accounts she had established in here in the United States and elsewhere. Plaintiff is informed and believes that Tringham and Debtor purchased with funds stolen from Plaintiff and/or other victims of their fraudulent investment schemes a home, a $40,000 diamond ring, a Range Rover and a BMW.

2(b). Tringham also transferred large sums of money to Debtor between 2006 and 2008. Debtor has transferred some of these funds to China, where her parents live, and the Philippines. Plaintiff is informed and believes that Debtor opened and/or owns bank accounts in the Philippines in her own name or using the name of Cindy Tringham.

26(c). On July 11, 2007, Plaintiff filed a complaint in the Los Angeles Superior Court against Debtor, Tringham, Finbar, and others for *inter alia* fraud, conversion and constructive trust.

26(d). On July 23, 2008, the Superior Court entered judgment against Debtor, Tringham and others (the "Judgment"). A copy of the Judgment is attached as Exhibit "A."

26(e). In or about early 2009, the Securities and Exchange Commission filed suit against Tringham and obtained a preliminary injunction freezing his assets and appointing a receiver to assume control of his companies. Tringham has since been arrested and is in federal custody pending criminal trial in the US District Court for the Central District of California. He awaits trial on charges that, among other things, he violated federal securities laws

27. As a result of Debtor's willful and malicious conduct, Plaintiff suffered deliberate or intentional injury and related damages. The damages include those alleged

**Non-Dischargeability Complaint**

in the above paragraphs including the (a) loss of funds transferred to offshore accounts by Debtor, (b) loss of funds used to purchase assets, including a $40,000 ring, two automobiles, and other possible assets, and (c) use of Plaintiff's funds for Debtor's non-business and personal expenses.

28. Plaintiff is entitled to an award of actual damages suffered by him, as set forth in the Judgment.

29. Plaintiff is also entitled to exemplary damages, as set forth in the Judgment.

29. Plaintiff is entitled to a determination that Debtor's indebtedness to him is nondischargeable under 11 U.S.C. § 523(a)(6).

**PRAYER**

WHEREFORE, Plaintiff prays that the Court enter judgment in favor of Plaintiff as follows:

(a) That Debtor's debts to Plaintiff Juergen Votteler are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), and (6); and

(b) For such other and further relief that the Court may deem just and proper.

DATED: November 5, 2009                LAW OFFICES OF TODD PICKER

_____
Todd Picker
Attorney for Plaintiff Juergen Votteler

9

**Non-Dischargeability Complaint**

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I, the undersigned, declare I am over the age of eighteen years and not a party to the within action or proceeding. My business address is 850 E. Chapman Ave., Suite A, Orange CA 92866.

On November 6, 2009, I served the within

**FIRST AMENDED COMPLAINT FOR NONDISCHARGEABILITY OF DEBTS**

on interested parties to this action by:

[ ] facsimile at the listed numbers; and/or by [ ] e-mail at the addresses listed, and/or by;
[ ] overnight courier and/or by [ ] personal delivery and/or by [X] regular mail by placing the original; [X] true copy(ies), thereof enclosed in sealed envelopes [X] addressed as follows: [ ] as addressed in the attached mailing list:

    Keith Berglund, Esq.
    Steve Wegner, Esq.
    The Berglund Group
    149 S. Barrington, #181
    Los Angeles, CA 90049

[X] BY MAIL [FRCP 5(b)(2)(C)]  I am readily familiar with the firm's practice of collection and processing correspondence for mailing with the U.S. Postal Service.

[ ] BY FACSIMILE [FRCP 5(b)(2)(E)]  The parties have agreed in writing to accept and receive service by facsimile.

[ ] BY EMAIL [FRCP 5(b)(2)(E)]  The parties have either agreed in writing to accept and receive service by email or have consented to such service by filing electronically with the court.

The document was transmitted by facsimile or email and the transmission was reported as complete and without error by the transmitting device.

[ ] BY EXPRESS MAIL; FEDERAL EXPRESS; U.P.S. [FRCP 5(b)(2)(B)]  I am readily familiar with the firm's practice of collection and processing correspondence for mailing with U.S. Postal Service Express Mail, Federal Express or United Postal Service.

Under that practice it would be deposited on that same day with postage fully prepaid in Los Angeles, California in the ordinary course of business. The envelope was sealed and placed for collection and mailing on the date of execution set forth below following ordinary business practices.

[ ] BY PERSONAL DELIVERY [FRCP 5(b)(2)(B)]  I personally delivered such envelope(s) by hand to the offices of the addressee(s).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 6, 2009, at Orange, California.

____April A. Hancock____  ____[signature]____
[Print Name of Person Executing Proof]  [Signature]